In the Matter of the INJURY to Theodore L. COREAN, an Employee of Jensen Ranch-Thorval Jensen, Employer.

Theodore L. COREAN, Appellant (Employee-Claimant),

v.

The STATE of Wyoming ex rel. WORKER'S COMPENSATION DIVISION, Appellee (Objector),

Jensen Ranch-Thorval Jensen, (Employer-Objector).

No. 86–47.

Supreme Court of Wyoming.

Aug. 6, 1986.

R. Douglas Dumbrill of Hughes & Dumbrill, Sundance, for appellant.

A.G. McClintock, Atty. Gen., Josephine M. Porter, Asst. Atty. Gen., and Patrick J. Crank, Asst. Atty. Gen., argued, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE and URBIGKIT, JJ., and RAPER, J., Retired.

CARDINE, Justice.

This is an appeal from the district court's denial of worker's compensation benefits. We will reverse.

## FACTS

On the morning of October 10, 1985, claimant Ted Corean drove his pickup truck from his home in Belle Fourche, South Dakota, to his job at the Jensen Ranch near Colony, Wyoming. In his truck he carried his personal tools as well as hydraulic jacks, a grease gun, and some oil owned by the ranch. He had moved the ranch equipment from the ranch workshop to his truck a few days earlier because that was the vehicle he took to the reclamation site where he plowed and reseeded bentonite pits. The tools were needed for periodic repairs on a tractor which the ranch provided for the reclamation work.

The reclamation site was northwest of the ranch house and most of the site was on ranch property. There were two routes claimant could take to reach the site. He could turn onto a bentonite haul road from the highway, continue on that road past the turnoff to the ranch house, and go directly to the site; or he could take the turnoff to the ranch house, drive past the ranch house, and continue to the site on that road. Except when he had to stop at the ranch house for instructions or equipment, claimant normally would pass the ranch house turnoff and go to the site via the bentonite haul road. Both roads to the site were private roads on ranch property. The haul road had been constructed by bentonite mining companies on an easement acquired from the ranch. The companies maintained the haul road, but it was also used by ranch vehicles on ranch business.

On the morning of October 10, 1985, claimant drove past the ranch turnoff on the haul road because the equipment necessary for his work was already in the truck. If the equipment had not been in his truck, he would have stopped at the ranch house to obtain it. He never made it to the reclamation site. His truck hit a patch of ice about a quarter of a mile past the turnoff, skidded off the road, and rolled. Claimant suffered a broken neck which eventually required surgery.

Claimant filed for worker's compensation benefits, but his employer, Mr. Thorval Jensen, contested the claim. The district court held a hearing on December 11, 1985, at which Mr. Jensen and claimant were the only two witnesses. At the hearing claimant agreed that he was entitled to wages only after he reached either the ranch house or reclamation site, and Mr. Jensen confirmed that arrangement when he testified: "As far as I'm concerned, the time started the minute he was at the job or at the shop." Claimant also stated that there was no agreement under which Mr. Jensen was required to compensate him for travel to and from home. He assumed, however, that Mr. Jensen would pay for wear and tear on the pickup truck to the extent it was used for ranch business because that was the arrangement the parties had adopted on prior occasions when claimant worked for Mr. Jensen.

Mr. Jensen admitted that, when he assigned the reclamation work to claimant, he asked claimant to use his own truck. According to Mr. Jensen, he made this request because he thought it would be handy for claimant to have his personal tools on the job site. When asked whether he received a benefit from this agreement, Mr. Jensen testified: "Well, it was handy, I guess." He also conceded that claimant had used the truck to jump-start the tractor and to transport tools between the ranch house and reclamation site.

In a lengthy closing argument, the parties and the district court concentrated on two issues involving the statutory definition of injury. Mr. Jensen's attorney contended that claimant did not suffer a compensable injury under § 27–12–102(a)(xii), W.S.1977, because the accident occurred outside "the premises occupied, used or controlled by the employer," and because it occurred outside "the course of employment." The court rejected the first argument but accepted the second. It found that claimant had not reached either the

ranch house or the reclamation project, had not begun to earn his daily wages, and therefore had not entered the course of employment under the parties' agreement. The court also found that claimant was not using his truck for the benefit of the employer when the accident occurred.

Claimant contends on appeal that the district court erred when it found that he was hurt outside the course of employment. He urges us to adopt the premises rule which says that a worker is automatically within the course of his employment when he is on the employer's premises. In the alternative, he maintains that there was a causal nexus between his travel to the reclamation site and his employment which was sufficient to bring him within the course of employment.

## THE PREMISES RULE

■ A worker is entitled to worker's compensation benefits only if he suffers an injury. See §§ 27–12–401 through 27–12–412, W.S.1977. According to § 27–12–102(a)(xii), W.S.1977:

> " 'Injury' means any harmful change in the human organism other than normal aging, and includes damage to or loss of a prosthetic appliance and death, *arising out of and in the course of employment* while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business." (Emphasis added.)

The critical statutory phrase emphasized above is found in the worker's compensation statutes of most states. The courts in these states recognize a subtle distinction between the phrases "arising out of" employment and "in the course of employment." An accident arises out of employment if it is causally connected to the employment; it occurs in the course of employment if it occurs at the time or place, or under the circumstances of the employ-

ment. 1 A. Larson, Workmen's Compensation Law § 6.10 at 3–3 (1985). In a majority of the states, when an employee is hurt on the employer's premises, it is conclusively established under the premises rule that the employee was acting within the course of his employment. Id., § 15.00 at 4–3. This does not mean, however, that the worker is necessarily entitled to benefits. He still must show that the harm arose out of his employment, i.e., was causally connected to his employment. Id., § 12.32 at 3–348.79.

Claimant recommends that we adopt the premises rule in Wyoming; but if we did so, we would detach the rule from its moorings. Unlike the state courts discussed above, we have consistently refused to create a two-part analysis for the phrase "arising out of and in the course of employment." Instead, we have construed "arising out of" employment to mean the same thing as "in the course of employment." *In Matter of Willey*, Wyo., 571 P.2d 248, 250 (1977), we stated:

> "Although the language contained in § 27–311(n), [W.S.1957, Cum.Supp.1975] is somewhat different from that contained in its predecessor, the meaning has remained the same. The provision acknowledges that injuries may occur on *or* off the premises of the employer. In either case, the injury is compensable if it arises out of and in the course of employment. This requirement emphasizes the need for a causal connection between the injury and the employment. Such a causal connection is supplied when there is a nexus between the injury and some condition, activity, environment or requirement of the employment. It is this requirement, *and only this requirement,* which is envisioned by the language contained in § 27–311(n), supra." (Emphasis added and citations omitted.) Id. at 250. See also, e.g., *Baker v. Wendy's of Montana, Inc.*, Wyo., 687 P.2d 885, 891–892 (1984), and *Cottonwood*

*Steel Corporation v. Hansen,* Wyo., 655 P.2d 1226, 1232 (1982).[1]

If we adopted the premises rule in Wyoming, any harm suffered by an employee on the employer's premises would occur within the course of employment. But, because we treat the phrases "in the course of employment" and "arising out of" employment as synonymous, the safeguard provided in most states by the arising-out-of test would not be available. The employee would receive benefits for *any* accident he suffered from any cause while on the employer's premises. For example, if an employee committed suicide, was shot by a jilted lover, or was hurt while repairing his personal automobile on the employer's premises, we would have to find a compensable injury. Unlike the courts that apply the two-part analysis, we would have to conclude that the harm arose out of the worker's employment. See 1 A. Larson, *supra,* §§ 11.21 and 12.32. The premises rule would create greater employment liability in Wyoming than it does elsewhere and would extend worker's compensation coverage beyond the bounds intended by the legislature.

Our decision in *Rocky Mountain Tank & Steel Company v. Rager,* Wyo., 423 P.2d 645, 647–648 (1967), supports our rejection of the premises rule. In that case, a night watchman died from asphyxiation caused by a faulty gas heater in a house provided by his employer. Although the house was located on factory grounds, we did not rely on that fact when we affirmed the award of benefits to the watchman's survivors. Instead we concentrated on what the watchman was doing when he died. We held that he died within the course of employment because he was on duty.

We could rationally adopt the "premises rule" if we also adopted the two-part analysis used in most states. But in Baker v. Wendy's of Montana, supra, 687 P.2d at 891–892, we rejected that analysis and re-affirmed the unified nexus test enunciated

in Matter of Willey, supra. We now reaffirm our decision in Baker v. Wendy's of Montana, supra, and hold that an injury occurs under the statutory definition when the nexus test has been satisfied, regardless of whether it takes place on or off the employer's premises.

Most accidents that occur on the employer's premises will also be causally connected to a condition, activity, environment or requirement of the employment. But this is not always true. An intentional assault on the employee, for instance, may have no palpable connection with either the premises or the employment just because it occurs on the premises. The causal nexus, not the premises, is the key.

### APPLYING THE NEXUS TEST

█ Under the nexus test, we have developed several clear rules and exceptions which dispose of most claims that arise out of accidents that occur during travel to or from work.

"The rule is that ordinarily an employee is not within the course of employment when he is injured going to or coming from work. However, when an employer supplies transportation or pays to defray travel expenses, the coming-and-going rule does not apply and workers injured while traveling directly to or from work are considered to be within the course of their employment." (Citations omitted.) *Matter of Van Matre,* Wyo., 657 P.2d 815, 816 (1983).

In an attempt to fit within the paid-travel exception, claimant contends that his wages included an indirect payment for travel expenses. He makes this contention even though there is no evidence that the parties intended any of his pay to cover travel. Mr. Jensen, the employer, testified that he made no arrangements with claimant to pay his travel expenses although such arrangements had been made when

---

1. When the Wyoming statutes were recodified in 1977, § 27–311(n), W.S.1957, became § 27–12–102(a)(xii), W.S.1977. Except for their section numbers, the statutes are identical. Compare Session Laws of Wyoming, 1977, ch. 142, § 1 with § 27–12–102(a)(xii), W.S.1977. Our holding in *Matter of Willey,* Wyo., 571 P.2d 248 (1977), applies to cases arising under § 27–12–102(a)(xii), W.S.1977. *Baker v. Wendy's of Montana,* Wyo., 687 P.2d 885 (1984).

claimant worked on the ranch in the late 1970's.

Claimant is essentially asking us to assume that travel costs were considered during his wage negotiations and therefore made up a part of his final contract. If we were to make that assumption in this case, we would have to make it in almost every coming-and-going case; the paid-travel exception would swallow the general rule. This assumption would rest on an improper analytical foundation, for it is the claimant's burden—not the employer's—to prove that the injury occurred within the course of the employment. *Matter of Van Matre,* supra, 657 P.2d at 816. Without an affirmative showing, the district court was required to assume that claimant's travel was unreimbursed.

If paid travel were the only exception to the coming-and-going rule, we would have to affirm the district court's denial of benefits in this case. But we believe that there are facts other than the payment of expenses which can bring a worker's travels into the course of his employment. In *Standard Oil Company v. Smith,* 56 Wyo. 537, 111 P.2d 132, 134–135 (1941), we held that an employee entered the course of his employment when he interrupted his return from a vacation to pick up several barrels of oil for his employer. We stated:

"[W]hen [the employee] continued the journey, he was acting with the intention of serving the business of the employer. * * * The service was performed with the consent of the employer, and it does not seem to us important that the hauling of two barrels of oil by themselves was not according to custom and would not have justified a special trip from Greybull to Casper for that purpose." (Citations omitted.) Id. at 135.

■ Our decision in *Standard Oil Company v. Smith,* supra, indicates that travel for the employer's benefit can form an exception to the normal coming-and-going rule. This exception is consistent with scope-of-employment analysis in tort law where benefit to the employer is a critical factor. *Beard v. Brown,* Wyo., 616 P.2d 726, 735–736 (1980). If benefit to the employer is an indicium of scope of employment in a tort case, it should also be available to claimant to establish course of employment in a worker's compensation case because the phrase has a broader meaning in the worker's compensation context. *Cottonwood Steel Corporation v. Hansen,* supra, 655 P.2d 1226, citing *Beard v. Brown,* supra, 616 P.2d at 736–737.

Another factor relevant to the course-of-employment determination is the employee's working hours. But it is clear from our holding in *Standard Oil Company v. Smith,* supra, that working hours are not necessarily dispositive. A worker performing extra-hours tasks for his employer's benefits may be acting within the course of his employment.

In the case at bar, the district court considered both the parties' agreement on work hours and the benefit to the employer from claimant's extra-hours activities. The court found "[t]hat working hours commenced when the employee arrived either at the ranch yard or at the site of work in the field" and "that the employee used his pickup for the employer's purposes on occasions by mutual agreement but was not so using it on the morning of this accident." In our review of these critical findings, we must apply the following standard:

"[W]e accept the evidence of the prevailing party as true, leaving out entirely the consideration of evidence presented by the unsuccessful party in conflict therewith, giving every favorable inference which may fairly and reasonably be drawn from the prevailing party's evidence. The findings of fact made by the trial court are presumed to be correct, and we will not disturb such findings unless inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence." (Citations omitted.) *Matter of Abas,* Wyo., 701 P.2d 1153, 1156 (1985).

The district court's finding that claimant was injured prior to the start of normal working hours, and its finding that claimant sometimes used his truck to the em-

ployer's benefit, are well supported by the evidence. But the district court's conclusion that claimant was not benefitting his employer at the time of the accident requires closer analysis.

■ When claimant drove from the ranch to Belle Fourche the night before the accident, the trip's only purpose was to take him home. The trip did not benefit the ranch even though claimant happened to be carrying the ranch's tools with him. When claimant left his home in Belle Fourche the next morning, he was simply returning to his job and was still only benefitting himself. When he passed the turnoff to the ranch house, however, the trip changed its character, and the employer became the beneficiary. We say so for this reason: Had claimant not transported the tools, equipment and supplies in the pickup, it would have been necessary for him to turn off the haul road and drive to the ranch house. According to the undisputed testimony of the parties, he would have entered the scope of employment as soon as he picked up the tools at the ranch house. Why should he not be covered after he passed the ranch house turnoff? Surely he should not be denied coverage simply because he did something for the benefit of his employer (transport the equipment in his truck) which obviated the need to stop at the ranch house. We conclude that when claimant reached the intersection and turned to the reclamation site instead of the ranch house, his transportation of the tools for his employer's benefit was within the course of his employment. The necessary nexus was established. The last leg of his trip from the intersection to the reclamation site was as beneficial to the employer as it would have been if claimant had turned off to the ranch, picked up the tools and equipment, and traveled to the job site.

Although the location of the accident is critical, it is not the relationship between the accident and the ranch boundary which matters. Instead, the accident's location must be compared with the location of the intersection so that we can determine whether claimant had resumed his employment. If claimant had rolled his pickup before reaching the intersection, he would not have re-entered the course of his employment and could not receive benefits.

We realize that our decision in this case rests on a fine factual distinction which could have been avoided if we had adopted the bright, arbitrary line embodied in the premises rule. But the advantages of such a rule are outweighed by the drastic and improper expansion of benefits it would cause. As we observed almost twenty years ago in *Rocky Mountain Tank & Steel Company v. Rager*, supra, 423 P.2d at 648,

> "the question of responsibility under the Workmen's Compensation Law for injury during times of rest and the like is one which is indeed difficult and cannot be categorically resolved * * *."

The district court's decision denying benefits is reversed, and the case is remanded for further proceedings consistent with this opinion.

RAPER, Justice, Retired, dissenting.

I dissent and agree with the trial judge that appellant was not at work within the purview of § 27–12–102(a)(xii), W.S.1977 (June 1983 Replacement). The employment agreement was that appellant's work started when he stopped at the ranch house or reported to the work site. Appellant had done neither. This court has supplied a third employment condition not in evidence, i.e., passing a turnoff.

I would have affirmed the district court.