239 P.3d 621 (2010)
2010 WY 128
James L. BALL, Appellant (Respondent),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Petitioner).
No. S-09-165.
Supreme Court of Wyoming.
September 22, 2010.
*622 Representing Appellant: George Santini of Ross, Ross & Santini, LLC, Cheyenne, Wyoming.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General; Cara Boyle Chambers, Assistant Attorney General. Argument by Ms. Chambers.
Before KITE, C.J., and GOLDEN, HILL, VOIGT[*], BURKE, JJ.
*623 GOLDEN, Justice.
[¶ 1] James L. Ball (Ball) appeals the district court decision reversing an Office of Administrative Hearings order awarding benefits for medical treatments Ball received for a hernia. Ball suffered the hernia when a spinal cord stimulator, implanted to treat chronic back pain from an earlier compensable work-related injury, malfunctioned and shocked him, causing him to stand rapidly and then fall. The question we must answer is whether the hernia occurred "in the course of the employment" as that term appears in Wyo. Stat. Ann. § 27-14-603(c)(iii) (Lexis-Nexis 2009). We hold that Ball's hernia occurred "in the course of the employment" and reverse the district court's decision.

ISSUES
[¶ 2] Ball presents these issues:
1. Was the decision of the Hearing Officer that James Ball's hernia was compensable under the "second injury doctrine" correct?
2. Did the District Court err by concluding as a matter of law that James Ball's hernia did not occur within the "course of employment" as required under § 27-14-603(c)(iii) (LexisNexis 2009)?
3. Should Wyoming recognize that injuries occurring from complications of medical treatment of work-related injuries are themselves compensable?
The Wyoming Workers' Safety and Compensation Division (Division) states a single issue:
Did the Hearing Examiner commit an error of law by analyzing Appellant's injury under the second compensatory injury doctrine and by failing to properly apply the requirements of Wyo. Stat. Ann. § 27-14-603(c)?

FACTS
[¶ 3] In June 1993, while at work, Ball slipped on a drain cover as he was walking into a walk-in refrigerator to get some milk, and injured his shoulder, neck, back, and right leg. He was awarded permanent total disability benefits and has received ongoing benefits for treatment of chronic pain, including narcotic pain medications and implantation of a spinal cord stimulator.
[¶ 4] Ball originally had a spinal cord stimulator implanted for treatment of his chronic pain in 2000. By May of 2006, the original stimulator was no longer operable and a new stimulator was implanted. Unfortunately, with the new stimulator, Ball developed painful side effects that he described as "good jolts" or "a shocking sensation," and which occurred without warning while he was lying down or moved in a certain way. At the time of the hearing in this matter, Ball was working with his physicians to resolve these problems.
[¶ 5] In mid-July of 2007, Ball was at home lying in bed when he experienced a shocking sensation that caused him to attempt to stand up "real fast." Ball described it as having his right leg feel as though it was all muscle cramps or a big "charley horse." As Ball stood, he fell. He did not know whether he passed out or not, but when he attempted to get up, he experienced a pain in his left groin that he had never experienced before. Ball attempted to call his physician as he feared he had broken a wire on the stimulator. He initially thought that he had perhaps pulled a muscle, but the pain in his left groin worsened over time to the point that he sought medical attention.
[¶ 6] A few days after falling, Ball saw Dr. Deborah Young, M.D., a board certified psychologist and neurologist who had treated Ball for some time for his chronic pain. Dr. Young, who had seen Ball on June 28, 2007, and recertified his total disability, met with Ball on July 26, 2007. Dr. Young stated the following concerning that visit:
In the interval since our last appointment, somewhere around 7/15/07, Mr. Ball experienced severe shock-like pains on his right flank and right leg, which he attributed to his spinal stimulator. The pain was so intense that he jumped out of bed and either secondary to the pain or the postural hypotension I mentioned in my last letter, or a combination of both, he fell to the floor. Since that time he has had severe left groin pain, which Dr. Wailes' office has plans to evaluate. At our appointment, it *624 was clear that Mr. Ball was in more pain; it was difficult for him to handle sitting in the chair and he asked to stand for part of the meeting.
[¶ 7] On August 1, 2007, Ball was examined by Dr. James Shaw, M.D., an associate of Dr. Wailes with Pacific Pain Medicine Consultants. At that time, Dr. Shaw noted:
The patient presents for an early follow up after a fall from bed. He ha[d] an electrical sensation discharge from what he believes was the SCS and a "charlie's horse" and passed out. He immediately felt a pull and burn in his groin on the left that has been present ever since. When he lays down he is fine, but when he gets up and walks around he feels the pain and it bulges. Valsalva increases the pain. It does not radiate to the testes or down the thigh. There is no history of previous herniorrhaphy. He still has stimulation in the low back but more stimulation in the legs but to the point of discomfort. No obvious significant movement of the leads on his last xray last week. The location of the pain is in the lower back neck and thoracic spine, but now has severe groin pain. The pain radiates down bilateral lower extremities and down bilateral upper extremities. The pain is described as sharp, burning, aching and stabbing. The severity of the pain is usually severe. The timing of the pain is constant. Associated symptoms are numbness and weakness on the right side. Pain clinic treatments have included medication management and spinal cord stimulation. Overall the patient is frustrated with ongoing pain and anxious to pursue other options. As part of this patient's exam, I have reviewed the notes of Dr. Young. The worst area of pain is located in the groin.
In that same report, Dr. Shaw noted the following in his treatment plan:
He is complaining of classic hernia complaints after this fall from his electrical feeling in his legs. I would consider this a work related problem based off the origin of the fall. I will order an ultrasound to r/o hernia as based on his complaints. In the meantime, no heavy lifting or repetitive bending in the meantime. Pain is so significant he couldn't tolerate the SCS adjustment we had scheduled for him so he has rescheduled.
[¶ 8] Following an abdominal CT scan, which revealed an inguinal hernia containing a large bowel, Ball underwent surgery on August 16, 2007. At the time of the operation, the surgeon noted that "[t]here was a lot of scarring either this hernia had been quite chronic or it may be related to previous surgery. I think the patient may have had a vasectomy on that side." Ball had in fact had a vasectomy more than twenty years earlier.
[¶ 9] Ball saw Dr. Young again on December 6, 2007, after having undergone hernia surgery. In a letter concerning that visit, Dr. Young summarized the history Ball had previously provided concerning his hernia, that he had jumped out of bed and fallen to the floor after experiencing an electrical sensation in his right leg. Dr. Young concluded, "[I]t would appear that the hernia developed as a consequence of the neurological sequelae of Mr. Ball's work-related injury."
[¶ 10] The Division issued a final determination denying payment for treatment of Ball's hernia on the basis that it was not related to Ball's original 1993 injury to his back. Ball objected to the Division's determination, and the matter was referred for a contested case hearing. During the contested case hearing, Ball contended that he was entitled to benefits to cover the costs related to his hernia because the development of his hernia was causally related to his original work-related injury. Specifically, Ball claimed that his fall was caused by a malfunction in his electrical stimulator, which was prescribed and implanted to treat his chronic low back pain. Ball contended that the hernia statute, Wyo. Stat. Ann. § 27-14-603(c), should not apply, but if it were applicable, he had proven the statute's elements.
[¶ 11] The Division contended at the contested case hearing that Ball had not filed an injury report for his hernia and thus neither the Division nor the hearing examiner had jurisdiction to award benefits. The Division further contended that § 27-14-603(c) was controlling and that Ball could not meet his *625 burden of proof under that statute, because "how, why, when, or where the Claimant's hernia occurred is a matter of significant speculation or conjecture." The Division also contended that one of the facilities that had provided care for Ball's hernia had failed to file timely reports of certain treatments or procedures and such applications for payment were thus barred.
[¶ 12] At the contested case hearing, the only witness to testify was Ball. No deposition testimony was presented, and the Division did not present an independent medical evaluation. Following the contested case hearing, the hearing examiner entered his findings, conclusions and order on February 7, 2008. The hearing examiner concluded the employee was not required to submit a new injury report because his hernia was a compensable second injury. The hearing examiner agreed with the Division, however, that certain of the costs for Ball's treatment were not reimbursable because the facility that had provided the treatment had not timely submitted the reports of its treatment.
[¶ 13] The hearing examiner also agreed with the Division that the hernia statute, § 27-14-603(c), was applicable. The hearing examiner found, however, that Ball had proved all of the statutorily required elements and Ball's hernia was therefore a compensable injury. Specifically, the hearing examiner made the following relevant findings of fact:
(i) Was the Hernia of Recent Origin?
51. This Office finds and concludes that Ball clearly proved his July 2007 hernia was of recent origin. Ball testified his left groin pain started after his fall and was a new pain. Ball also indicated he has never before had a hernia or groin pain, although he did have a vasectomy five years ago. In addition, there is no indication of any groin pain or hernia in the medical records, which were submitted in this case, prior to July 2007. Although Dr. Deemer's operative report suggests that Ball's hernia could have been chronic, Ball's symptoms, related to his hernia, did not arise until his fall which was caused by a shock from the spinal stimulator.... Furthermore, this Office gave little weight to Dr. Deemer's unsolicited comment in his operative report because the statement was speculative as to the reason for the scar tissue.
(ii) Was the Hernia's Appearance Accompanied by Pain?
52. This Office finds and concludes that Ball clearly proved his July 2007 hernia was accompanied by pain. Ball testified he immediately experienced left groin pain after his fall in July 2007. Ball's testimony is further supported by Dr. Young's July 26, 2007, letter to Ball's claim's analyst which indicated Ball had severe left groin pain after his fall, and Ball was in pain at his appointment with Dr. Young. Furthermore, the medical records from each of the physicians indicated that Ball consistently reported how and when his left groin pain started.
(iii) Was the Hernia immediately preceded by some accidental strain suffered in the Course of Ball's Employment?
53. The appearance of Ball's hernia or hernia related symptoms was immediately preceded by an accidental strain. Ball testified, and repeatedly and consistently reported to his medical providers, that he fell when his leg gave out after a shock from his spinal stimulator caused him to have a "charley horse."
54. In addition, this Office finds and concludes that Ball's accidental strainthe "charley horse" and subsequent fallwas suffered in the course of his employment because the spinal stimulator was the initial cause of the unbroken chain of events leading to Ball's accidental strain. The spinal stimulator adequately connected or related Ball's fall/accidental strain to his work because the spinal stimulator was implanted into Ball to treat his low back and leg pain which directly resulted from his work related injury in 1993. Moreover, the medical records from Pacific unequivocally established that Ball's spinal stimulator provided significant relief of Ball's work related pain. In other words, as required by the quote cited above from In re Hardison, Ball clearly proved his July 2007 hernia was related to his employment through the implanted spinal stimulator.

*626 (iv) Did Ball's Hernia Exist Prior to the Date of His Fall?
55. This Office finds and concludes that Ball clearly proved his hernia did not exist prior to his fall in July 2007. Other than Dr. Deemer's statement in his operative report, "either this hernia had been quite chronic or it may be related to previous surgery," there is no evidence which suggested Ball had the hernia before his fall in July 2007. The medical records from Dr. Shaw and Dr. Young do not mention a hernia or groin pain prior to July 2007 and Dr. Shaw's August 1, 2007, medical notes expressly stated Ball has no history of a hernia.
56. Accordingly, Ball has met his burden under Wyo. Stat. Ann. § 27-14-603(c) (LEXIS 2007). Prior to the July 2007 work related fall, there is no evidence Ball ever had a hernia or suffered symptoms related to a hernia. The work related fall resulted in a strain accompanied by immediate pain and the appearance of an inguinal hernia on Ball. Ball is therefore awarded medical benefits for his hernia.
[¶ 14] The Division appealed the hearing examiner's order to the district court. On appeal to the district court, the Division submitted only one issue, whether the hearing examiner had misapplied the elements of the hernia statute to the evidence in the case. In arguing its position, the Division contended a hernia is not compensable as a second injury unless the original injury was itself a hernia.
[¶ 15] On July 27, 2009, the district court entered its Order Reversing and Remanding Award of Benefits. In so ordering, the district court expressly deferred to the hearing examiner's findings of fact and found those were supported by substantial evidence. The district court concluded, however, that under the hernia statute, a hernia is a compensable injury only when it is the original injury. That is, the district court rejected even the Division's proposed compromise interpretation and concluded, as a matter of law, a hernia can never be compensable as a second injury.
[¶ 16] Ball timely filed his notice of appeal. On appeal, Ball again contends the hernia statute does not apply, but also argues alternatively that if the Court were to find the statute does apply, his hernia injury meets the statute's requirements for compensability. The Division has again limited its statement of the issue on appeal and has adopted the district court's reasoning. It agrees there is no evidentiary dispute for this Court to address and instead contends, as a matter of law, a hernia is never compensable as a second compensable injury.

DISCUSSION

Standard of Review
[¶ 17] We review administrative decisions based on the factors set forth in the Wyoming Administrative Procedure Act, which provides:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009).
*627 [¶ 18] In regard to the interpretation and application of law, we have further stated:
The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law.
Wyoming Workers' Safety & Comp. Div. v. Faulkner, 2007 WY 31, ¶ 10, 152 P.3d 394, 396 (Wyo.2007) (quoting Bailey v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2002 WY 145, ¶ 9, 55 P.3d 23, 26 (Wyo.2002) (citations omitted)).
[¶ 19] In an appeal from a district court's appellate review of an administrative decision, we review the case as if it came directly from the hearing examiner, affording no deference to the district court's decision. State ex rel. Wyoming Workers' Safety & Comp. Div. v. Kaczmarek, 2009 WY 110, ¶ 7, 215 P.3d 277, 280 (Wyo.2009).[1]
[¶ 20] Because Ball and the Division agree that Ball suffered a hernia injury, the sufficiency of the evidence substantiating that injury is not at issue. Likewise, the Division does not in this appeal challenge the hearing examiner's findings regarding three of the four required elements of the hernia statute, namely, the hernia was of recent origin, the appearance of the hernia was accompanied by pain, and the hernia did not exist before the date of the injury. See § 27-14-603(c)(i), (ii), and (iv). Where the parties diverge is on the third requirement of the hernia statute, § 27-14-603(c)(iii), that the hernia was sustained "in the course of the employment." There is again no factual dispute as to the circumstances of Ball's hernia injury. Instead, the parties dispute questions of law, specifically the meaning of the phrase "in the course of the employment" in the hernia statute, and the applicability of the second compensable injury rule to a hernia injury.

Second Compensable Injury Rule
[¶ 21] At the outset of our discussion, we believe it is a useful starting point to address what the second compensable injury rule is and what it is not. In its brief, the Division has pointed out that where a common law remedy conflicts with a statutory remedy, the statutory remedy is controlling, citing Schlattman v. Stone, 511 P.2d 959, 961-62 (Wyo.1973). Applying this principle, the Division contends the second compensable injury rule is a common law remedy that conflicts with the hernia statute and thus cannot be applied to a hernia injury. We do not take issue with the Division's statement of the relationship between statutory and common law remedies, but we do disagree with the Division's contention that the second compensable injury rule is a "common law remedy."
[¶ 22] The Workers' Compensation Act defines the term "injury" for purposes of compensability under the Act. "Injury" means
any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.
Wyo. Stat. Ann. § 27-14-102(a)(xi) (Lexis-Nexis 2009).
[¶ 23] We have discussed the causal nexus this provision requires between an injury and the injured employee's work:
The provision acknowledges that injuries may occur on or off the premises of the employer. In either case, the injury is compensable if it arises out of and in the *628 course of employment. This requirement emphasizes the need for a causal connection between the injury and the employment. Such a causal connection is supplied when there is a nexus between the injury and some condition, activity, environment or requirement of the employment. It is this requirement, and only this requirement, which is envisioned by the language contained in § [XX-XX-XXX(a)(xi)].
Corean v. State ex rel. Workers' Comp. Div., 723 P.2d 58, 60 (Wyo.1986); see also Haagensen v. State ex rel. Wyoming Workers' Comp. Div., 949 P.2d 865, 867-68 (Wyo.1997). We have also stated that an "injury is not compensable if it cannot fairly be traced to the employment as a contributing cause and if it comes from a hazard that the employee would have been equally exposed to outside of the employment." Finley v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2006 WY 46, ¶ 8, 132 P.3d 185, 188 (Wyo. 2006) (quoting State ex rel. Wyoming Workers' Safety & Comp. Div. v. Bruhn, 951 P.2d 373, 377 (Wyo.1997)).
[¶ 24] The above-quoted passages are this Court's interpretations of the statutorily required causal link between an injury and the injured employee's work. The same is true of the second compensable injury rule. When a condition or injury is found compensable under the second compensable injury rule, it merely means that an initial compensable injury has resulted in an injury or condition that requires additional medical intervention. That is, under the second compensable injury rule, a subsequent injury or condition is compensable if it is causally linked to the initial compensable work injury. Alvarez v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2007 WY 126, ¶ 18, 164 P.3d 548, 552 (Wyo.2007); Yenne-Tully v. Workers' Safety & Comp. Div., 12 P.3d 170, 172 (Wyo.2000). We recently explained the second compensable injury rule and its required causation:
We have used a number of terms to describe the required causal connection between the first and second injuries including: "direct cause" (Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div., 996 P.2d 679, 684 (Wyo.2000); Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2003 WY 83, ¶ 12, 72 P.3d 799, 803 (Wyo.2003)); "caused by" (Casper Oil Co. v. Evenson, 888 P.2d 221, 226 (Wyo.1995)); "causally related to" (Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2009 WY 46, ¶¶ 26-27, 204 P.3d 967, 973-74 (Wyo.2009); Walsh v. Holly Sugar Corp., 931 P.2d 241, 243 (Wyo.1997)); "direct causal connection" (Alvarez v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2007 WY 126, ¶ 17, 164 P.3d 548, 552 (Wyo. 2007)); "direct and natural result" (Stewart v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2007 WY 58, ¶ 12, 155 P.3d 198, 203 (Wyo.2007) (quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.10, at 10-2 (2006))); "significant causal connection" and "predominant cause" (Yenne-Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2002 WY 90, ¶ 11, 48 P.3d 1057, 1062 (Wyo.2002)); "fairly be traced to" and "a contributing cause" (State ex rel. Wyo. Workers' Safety & Comp. Div. v. Bruhn, 951 P.2d 373, 377 (Wyo.1997)). Regardless of the terminology used to describe the causal connection, the burden remains the same: the claimant must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first.
Kaczmarek, ¶ 11 n. 3, 215 P.3d at 282 n. 3.
[¶ 25] That the second compensable rule is a causation analysis, and not a court-created benefit or remedy, is clear from the manner in which this Court has applied the rule. See, e.g., Chavez v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2009 WY 46, ¶¶ 26-27, 204 P.3d 967, 973-74 (Wyo.2009) (recognizing rule that subsequent injury is compensable if it is causally related to initial compensable work injury and upholding Medical Commission's factual finding that the required causal link did not exist between original work-related injury and subsequent back surgery); Nagle v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2008 WY 99, ¶ 38, 190 P.3d 159, 173 (Wyo.2008) (applying second compensable injury rule to find causal link between original work injury to foot and wrist and hip injuries sustained *629 fourteen years later in fall caused by disabled foot); Alvarez, ¶ 26, 164 P.3d at 555 (applying second compensable injury rule in upholding Medical Commission finding that re-tear of rotator cuff and resulting surgery were related to original work-related rotator cuff tear); Carabajal v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2005 WY 119, ¶ 17, 119 P.3d 947, 953 (Wyo.2005) (reversing OAH denial of benefits and remanding for application of second compensable injury rule in consideration of causal relationship between surgery to treat herniated disc and work injury over twenty years earlier); Casper Oil Co. v. Evenson, 888 P.2d 221, 225 (Wyo.1995) (upholding benefits under second compensable injury rule where injured employee received immediate medical attention for work-related back injury and proved a causal link to his subsequently developed need for surgery); Baldwin v. Scullion, 50 Wyo. 508, 62 P.2d 531, 539 (1936) (upholding award of benefits where employee showed subsequent condition was gradually and ultimately produced by original work injury).
[¶ 26] This Court's analysis in other cases involving the application of the second compensable injury rule proceeds in much this same vein. It is thus clear that the second compensable injury rule is not a common law remedy. It is simply an expression of this Court's interpretation of the causal link required between an employee's work and original work injury and any related and subsequently developed injury or condition.
[¶ 27] We therefore reject the Division's argument that the rule cannot be applied where there is a statute governing a particular injury or condition. We now turn to the Division's remaining argument that the language of the hernia statute limits compensability of a hernia injury to those instances where the hernia is the original injury and the hernia occurred in the work place.

Hernia Statute
[¶ 28] The Division and Ball disagree whether the hernia statute applies and, if it does apply, how it should be interpreted. The hernia statute provides as follows:
If an employee suffers a hernia, he is entitled to compensation if he clearly proves that:
(i) The hernia is of recent origin;
(ii) Its appearance was accompanied by pain;
(iii) It was immediately preceded by some accidental strain suffered in the course of the employment; and
(iv) It did not exist prior to the date of the alleged injury.
Wyo. Stat. Ann. § 27-14-603(c) (LexisNexis 2009).
[¶ 29] In interpreting the hernia statute, to determine both its applicability and its meaning, we apply our usual rules of statutory interpretation.
In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed in pari materia and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Wyoming Board of Outfitters and Professional Guides v. Clark, 2001 WY 78, ¶ 12, 30 P.3d 36, ¶ 12 (Wyo.2001); Murphy v. State Canvassing Board, 12 P.3d 677, 679 (Wyo. 2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. Billis v. State, 800 P.2d 401, 413 (Wyo.1990) (citing McGuire v. McGuire, 608 P.2d 1278, 1283 (Wyo.1980)).
Moreover, we will not enlarge, stretch, expand, or extend a statute to matters *630 that do not fall within its express provisions. Gray v. Stratton Real Estate, 2001 WY 125, ¶ 5, 36 P.3d 1127, ¶ 5 (Wyo.2001); Bowen v. State, Wyoming Real Estate Commission, 900 P.2d 1140, 1143 (Wyo.1995).
Loberg v. Wyo. Workers' Safety & Comp. Div., 2004 WY 48, ¶ 5, 88 P.3d 1045, ¶ 5 (Wyo.2004) (quoting Board of County Comm'rs of Teton County v. Crow, 2003 WY 40, ¶¶ 40-41, 65 P.3d 720, ¶¶ 40-41 (Wyo.2003)). Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.
State v. Hanover Compression, LP, 2008 WY 138, ¶ 8, 196 P.3d 781, 784 (Wyo.2008) (quoting BP Am. Prod. Co. v. Wyo. Dep't of Revenue, 2005 WY 60, ¶ 15, 112 P.3d 596, 604 (Wyo.2005)).
[¶ 30] The Division contends that the hernia statute applies anytime the injury at issue is a hernia. Ball on the other hand contends that the statute applies only where the hernia at issue is the original work injury. We agree with the Division and conclude, as the hearing examiner did, that the hernia statute unambiguously requires an employee's injury to satisfy all criteria in the statute to be compensable. The statute does not create any exceptions to its application, and we would have to read terms into the statute to create an exception for hernias that are second compensable injuries, something we will not do. See Parker v. Artery, 889 P.2d 520, 528 (Wyo.1995) (legislature's omission of language from statute construed as intentional).
[¶ 31] Having determined the statute is applicable, we turn then to the parties' contentions concerning its meaning. The present dispute is centered on the meaning of the phrase "in the course of the employment," as it is used in the third element of the hernia statute. See § 27-14-603(c)(iii). Ball contends that "in the course of employment" means a hernia is compensable if it is found to be causally related to the employee's original work injury, assuming all of the other elements of the statute are met. The Division on the other hand contends that the phrase means the hernia must have been the original injury and must have occurred in the workplace to be compensable. We find Ball's position to be the more persuasive as it is in keeping with the plain language and context of the hernia statute, as well as the legislative intent.
[¶ 32] It is clear at the outset that the legislature did not expressly state, as it certainly could have, that a hernia must be suffered in the workplace, and be the original work injury, to be compensable. We note with interest that in the same statute addressing a hernia, the legislature also addresses employment-related coronary conditions and has written "[t]he causative exertion occurs during the actual period of employment stress[.]" Wyo. Stat. Ann. § 27-14-603(b)(ii) (LexisNexis 2009) (emphasis added). In the hernia section of this same statute, § 27-14-603(c)(iii), instead of writing that the hernia "was immediately preceded by some accidental strain in the course of the employment," the legislature easily could have written that the hernia "was immediately preceded by some accidental strain suffered during the actual period of employment stress," or that the hernia "was immediately preceded by some accidental strain suffered at the workplace" or "at work," but it did not.
[¶ 33] Plainly, if the legislature had meant to say "at the workplace" or "at work" in the hernia statute, it would have done so. The language is not only shorter, but quite specific. We think such language would have come naturally to any draftsman, unless that draftsman really intended to say something different from "at the workplace" or "at work." In keeping with our rules of statutory interpretation, we will not supply those terms or read them into the statute. It follows then that the only way we may accept the Division's proposed interpretation of *631 § 27-14-603(c)(iii) is to find those limitations on compensability within the plain meaning of the phrase "in the course of the employment."
[¶ 34] The "in the course of employment" language is used elsewhere in the Act, and because our rules of interpretation mandate that we construe statutes in pari materia and must consider and construe in harmony all statutes relating to the same subject or having the same general purpose in ascertaining the meaning of a given law, the legislature's use of the language elsewhere in the Act will be our starting point for determining the meaning of the phrase as it is used in the hernia statute. In particular, the Act defines an injury as one "arising out of and in the course of employment." § 27-14-102(a)(xi) (emphasis added).
[¶ 35] As noted in our earlier discussion, this Court has addressed on numerous occasions the type of causal requirement that is created by the Act's use of the phrase "arising out of and in the course of employment." With respect to the separate components of the phrase, we have held that there is no distinction to be drawn between "arising out of employment" and "in the course of employment." Corean, 723 P.2d at 60. In Corean, we stated:
Unlike the state courts discussed above, we have consistently refused to create a two-part analysis for the phrase "arising out of and in the course of employment." Instead, we have construed "arising out of" employment to mean the same thing as "in the course of employment."

Id. (emphasis added).[2]
[¶ 36] In Corean, this Court not only adhered to its prior refusal to recognize a distinction between the phrases "arising out of employment" and "in the course of employment," it also rejected the suggestion that the place where an employee's injury occurred is a definitive factor in determining whether that injury arose out of or in the course of employment. Our words bear repeating:
The provision acknowledges that injuries may occur on or off the premises of the employer. In either case, the injury is compensable if it arises out of and in the course of employment. This requirement emphasizes the need for a causal connection between the injury and the employment. Such a causal connection is supplied when there is a nexus between the injury and some condition, activity, environment or requirement of the employment. It is this requirement, and only this requirement, which is envisioned by the language[.]
Id.
[¶ 37] We see no reason to depart from our holding in Corean. The phrases "arising out of" and "in the course of" employment, together or separately, mean the same thing. Thus, the phrase "in the course of the employment" as used in the hernia statute means the same thing it means elsewhere in the Act. A hernia, like any other injury, is compensable if there exists "a nexus between the injury and some condition, activity, environment or requirement of the employment." See Corean, 723 P.2d at 60. And, a hernia, like any other injury, is compensable whether it occurs on or off the premises of the employer, as long as the required nexus exists between the employee's work and the hernia. Id.; see also Alvarez, ¶ 27, 164 P.3d at 555 ("[w]hat matters is not where the employee was or the nature of the triggering event, but whether the initial compensable injury ripened into a condition requiring additional medical intervention and whether the subsequent injury was causally related to the initial compensable injury").
*632 [¶ 38] The upshot of the legislature's use of the phrase "in the course of the employment" in the hernia statute is that a hernia is compensable for the same reason any other work injury is compensable  there exists a causal relationship between the work and the injury. It follows then that the second compensable injury rule applies in the same manner to a hernia as it would to any other work injury. If a causal link exists between an employee's original work injury and his development of a hernia, the hernia arose "in the course of the employment" and is compensable as a second or subsequent compensable injury.
[¶ 39] This interpretation does not undermine the purpose to be achieved by the restrictions on the compensability of hernia injuries. This Court has previously discussed the legislative purpose behind the statute limiting the compensability of hernia injuries:
We have already quoted from Smith v. Cabarrus Creamery Company [217 N.C. 468, 8 S.E.2d 231 (1940)], a Tennessee case, a state which has a statute on hernia almost like ours, and have seen that the court in that case did not believe that within the contemplation of the statute, liberally construed, industry should be relieved from most cases of hernia, most of which, as stated by the court, "are produced (protrude) by the strain of lifting." The South Carolina Court, under a statute on hernia also very similar to ours, expressed the opinion in Rudd v. Fairforest Finishing Co., 189 S.C. 188, 200 S.E. 727, 729 [ (1939) ], that "in our opinion, the legislative purpose evident in our Act is to restrict compensation for hernia to those cases where there is a relative and reasonably close coincidence between the accidental injury and the hernia, and where it is clear that no other agency intervened, as to time, place, or action, to cause the injury." In Arduini v. General Ice Cream Company, 123 Conn. 43, 46, 192 A. 314, 316, 114 A.L.R. 1333 [ (1937) ], the court stated that "the underlying reason for such special provisions [as to hernia] in this and other states is that owing to the nature of hernia and its onset, a lifting or straining, perhaps months before, may be assigned as the producing cause and the basis of a claim for compensation the merits of which, due to lapse of time and lack of notice to the employer, are extremely difficult of just determination, and the purpose is to restrict compensation to those cases where there is relative coincidence of accident and some significant manifestation of a hernia resulting therefrom, and thereby measurably alleviate that difficulty." ... With the light which we have on the question before us, imperfect, perhaps, as that still is, we are unable to see how we can sustain the contention of appellant above discussed. It may not be amiss, in this connection, to quote from Dr. Kessler, from whom we have already quoted, and who wrote on page 418 as follows: "The specter of an army of fraudulent claims for hernia is not as menacing to these employers who have been progressive enough to institute physical examination of their employees, both at the time of hiring and at periodical intervals. The record of a preexisting hernia bars a claimant from compensation unless the existing hernia becomes strangulated. With a record of no hernia at the time of hiring and the occurrence of a hernia during the course of employment, the task of deciding the compensability becomes easier. The fact that no hernia existed prior to the alleged accident and there was a corroborated history of some strain or unusual effort are in my mind the two most important criteria of the responsibility for a hernia and payment of compensation by the employer."
Colorado Fuel & Iron Corp. v. Frihauf, 58 Wyo. 479, 494-96, 135 P.2d 427, 432-433 (1943).
[¶ 40] The primary goal of the hernia provision, as recognized by this Court in Frihauf, is to restrict compensation for hernia injuries to those hernias that are work related and are reported in a sufficiently timely manner that the Division and the employer have an adequate opportunity to evaluate the causal link between the hernia and the employee's work. Given the meaning we have always given the phrase "in the course of employment," the Division is left in a position in which it may make the required *633 determinations of whether the reported hernia injury was of recent origin, accompanied by pain, work related, and not preexisting. The required determinations may be made without reading into the statute a bright line rule requiring that the hernia both occurred in the workplace and that it was the original injury.
[¶ 41] As further evidence that our interpretation does not offend the legislative intent in using the phrase "in the course of employment," we note that this Court has for years interpreted the phrase in the manner discussed above. During that time, the legislature has not changed the definition or enhanced the hernia statute to limit compensability to injuries that occur in the workplace. We thus conclude that the legislature has acquiesced in the interpretation we have given the phrase "in the course of employment," as that phrase is used throughout the Act, including in the hernia statute. See In the Interest of ANO, 2006 WY 74, ¶ 14, 136 P.3d 797, 801 (Wyo.2006).
[¶ 42] We find that if there is any disservice to the legislative intent, it is in the statutory interpretation urged by the Division. The Division, in its brief on appeal and again during oral argument, agreed that there is no factual dispute concerning the events that led to Ball's hernia. The Division further stated it does not take issue with the hearing examiner's finding that Ball's hernia was caused by Ball's original work injury. Instead, the Division contends the hernia statute makes this a unique case where that causal relationship is immaterial because the statute bars benefits for any hernia injury unless the injury is the original injury and occurred in the workplace. The Division went so far as to argue that if the injury Ball suffered when his spinal stimulator malfunctioned had been something other than a hernia, a broken limb, for example, the injury would have been compensable.
[¶ 43] The Division's interpretation produces an absurd result, and we have repeatedly held that we will reject statutory interpretations that lead to absurd results. See Stutzman v. Office of Wyoming State Engineer, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo.2006); Allied-Signal, Inc. v. Wyoming State Bd. of Equalization, 813 P.2d 214, 226 (Wyo.1991). That the legislature did not intend such a result is further evidenced by the legislature's express statement that at least part of its intention in enacting the Act was to ensure benefit claims would be decided on their merits. See Wyo. Stat. Ann. § 27-14-101(b) (LexisNexis 2009) ("[i]t is the specific intent of the legislature that benefit claims cases be decided on their merits"). The Division's proposed bright line rule, that a hernia must occur in the workplace and be the original work injury, disregards the merits of an actual causal relationship between a hernia injury and the employee's work and thus achieves a result opposite of that intended by the legislature.

Quasi-Employment Doctrine
[¶ 44] As a final matter, we address the Division's contention that the hearing examiner's finding of compensability was an improper application of the "quasi-employment doctrine" that this Court rejected in Bruhn. Again, we disagree. In Bruhn, this Court rejected the "quasi-employment doctrine" because it was viewed as a doctrine that would allow compensation for an injury that could not be fairly traced to the employee's work and that the employee would have been equally exposed to outside of the employment. Bruhn, 951 P.2d at 377. This is not a concern in the present case.
[¶ 45] The hearing examiner applied the clear and convincing burden of proof required by the hernia statute and found Ball had met this elevated burden. He found Ball had presented clear and convincing proof of the causal link between the malfunction of his spinal stimulator, which was implanted to treat the original work injury, and his subsequent fall and hernia. Because the Division does not contest this finding, it cannot suggest that the concern we expressed in Bruhn is at play in this case. The harm to which Ball was exposed was one that occurred only because of the medical treatment he received for a work injury. The medical treatment Ball received for his work injury caused his hernia, and the hernia was therefore a compensable second injury. See Rodgers v. State ex rel. Wyoming Workers' Safety & Comp. *634 Div., 2006 WY 65, ¶ 53, 135 P.3d 568, 585 (Wyo.2006) (holding compensable subsequent gastrointestinal problems caused by pain medication taken for work-related back injury).
[¶ 46] The hearing examiner did not rely on the quasi-employment doctrine in finding a causal connection between Ball's original work injury and his hernia. There was, therefore, no error related to that doctrine.

CONCLUSION
[¶ 47] The hearing examiner's finding that the authorized medical treatment for Ball's original work injury caused his subsequent hernia is uncontested, and the district court erred in holding that benefits were barred on the ground that the second compensable injury rule could not be applied. We reverse and remand to the district court for a remand to the Office of Administrative Hearings for reinstatement of the hearing examiner's original order awarding benefits.
NOTES
[*] Chief Justice at time of oral argument.
[1] The district court's decision in such cases is, however, always of help as an aid to our analysis and may reveal some factor not apparent to the parties but a subject of judicial discernment. Bd. of Cty. Comm'rs of Teton Cty. v. Teton Cty. Youth Servs., Inc., 652 P.2d 400, 421 (Wyo. 1982) (Raper, J., dissenting).
[2] We acknowledge the Division relied on our analysis in Corean to support its opposite suggestion that this Court has drawn a critical distinction between the phrases "arising out of" and "in the course" of employment and has held that the latter means during working hours and in the place of employment. The Division's recounting of our holding in Corean was flawed because it relied on our recitation of the rulings in certain other states, without then considering the paragraph immediately following that recitation, quoted above in the text, wherein we expressly rejected that approach. Thus, contrary to the Division's assertion, we have not interpreted the phrases "arising out of" and "in the course of" employment as having separate and distinct meanings, but have in fact reached the opposite conclusion.