2012 WY 6

**Scott A. DAVENPORT, Appellant (Petitioner/Claimant),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–11–0121.

Supreme Court of Wyoming.

Jan. 12, 2012.

Representing Appellant: George Santini of Ross, Ross & Santini, LLC, Cheyenne, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] In 2008–2009, Scott Davenport sought worker's compensation benefits for medical care and surgery to fuse vertebrae in his lumbar spine. The Wyoming Workers' Safety and Compensation Division (Division) denied benefits on the basis that his 2008–2009 back problems were not caused by work related injuries he suffered in 1984 and 1985. After a contested case hearing, the Office of Administrative Hearings (OAH) upheld the Division's denial of benefits, ruling that the procedure was necessitated by a preexisting congenital defect in Mr. Davenport's lumbar spine and not his prior work related injuries. Mr. Davenport petitioned for judicial review

and the district court affirmed the OAH decision. He then appealed to this Court claiming the OAH erred by failing to recognize that an aggravation of a preexisting congenital defect is compensable and misapplied the second compensable injury rule.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Mr. Davenport presents the following issues for this Court's consideration:

1. Did the Hearing Officer err by not recognizing that a material aggravation of a preexisting or congenital condition is a compensable injury and that the delayed effects of such aggravation are also compensable?

2. Was the second compensable injury rule misapplied by the Hearing Officer?

The Division states the issue more generally:

Did substantial evidence support the OAH's decision that Davenport failed to prove a causal connection between his 1984 and 1985 work injuries and his 2008 lumbar symptoms and bi-level fusion surgery?

## FACTS

[¶ 4] Mr. Davenport has a long history of back problems. In 1984, he was employed by Carbon County Coal Company as an underground mechanic in its coal mine near Hanna, Wyoming, when he and another employee attempted to move a 500 pound hydraulic cylinder. The other employee dropped his end of the cylinder and Mr. Davenport injured his lower back while trying to continue to hold his end. Mr. Davenport was evaluated by orthopedic surgeon, Robert Curnow, M.D., who ordered x-rays, which were normal, and diagnosed a lumbosacral sprain. Mr. Davenport returned to work a short time later. The Division granted workers' compensation benefits for that injury.

[¶ 5] On April 8, 1985, Mr. Davenport was at work for Carbon County Coal Company when he fell and injured his lower back again. He was carrying an oxygen tank on his shoulder and walking in mud, when his feet became tangled in some wires. Imaging tests of Mr. Davenport's lumbar spine showed a defect in the bone at L4, known as a pars defect. Dr. Curnow stated in a letter to Mr. Davenport's employer that the defect in his spine was "most likely congenital but has predisposed him to chronic back pain." Dr. Curnow did not believe that Mr. Davenport could continue to perform the heavy lifting required by his job unless he had surgery, so he recommended surgery or employment retraining. Mr. Davenport chose to retrain as a welder. Mr. Davenport continued to see Dr. Curnow for approximately two years. At Mr. Davenport's final appointment with Dr. Curnow in 1987, he was "progressing well," was not doing any heavy lifting and was not on any medication. Mr. Davenport was awarded benefits for the 1985 injury; however, the Division did not make any benefit payments after March 31, 1989.

[¶ 6] Over the years, Mr. Davenport suffered several other injuries. In 1992, he was injured when a chain hit him in the chest and leg. He was also injured in 1995 when a pulley fell on his head while working as a welder. He underwent neck surgery as a result of that injury. In 2001, Mr. Davenport had an ATV accident, where he landed on his right shoulder and back. He did not report any specific low back or leg pain at that time.

[¶ 7] In 2004, Mr. Davenport was involved in a motor vehicle accident and again injured his back. X-rays showed an "[a]bnormal appearance of the lumbar spine with Grade I spondylolisthesis L4 on L5...." Spondylolisthesis is a misalignment of the lumbar vertebrae with one of the vertebrae (in this case L4) moving forward over the lower vertebrae (L5). Spondylolisthesis occurs when a person has a pars defect, which allows the forward movement of the vertebrae. The grade describes the amount of movement, with the alignment getting progressively worse from Grade I to Grade IV.

[¶ 8] In November 2008, Mr. Davenport went to see neurosurgeon Debra Steele, M.D. with a complaint of lower back pain. Dr. Steele ordered tests which showed Mr. Davenport had a L4 pars defect with Grade

II L4 on L5 spondyloslisthesis.[1] Dr. Steele recommended surgery, and Mr. Davenport requested workers' compensation benefits, claiming that his surgery was a direct result of his 1984/1985 work related injuries. The Division denied his claim and he requested a contested case hearing. Despite the denial of his claim, Dr. Steele performed fusion surgery on Mr. Davenport at L4, L5 and S1.

[¶ 9] At the hearing, the OAH reviewed Dr. Curnow's medical records and deposition, which was taken as part of Mr. Davenport's request for benefits from the 1985 injury; Dr. Steele's medical records and deposition; medical records from various complaints and injuries between 1986 and 2008; and an independent medical examination (IME) performed by neurosurgeon Paul Williams, M.D. Mr. Davenport and Dr. Williams testified at the contested case hearing. The hearing examiner issued his decision, generally concluding that the evidence established Mr. Davenport's pars defect and spondolylisthesis were congenital, he had failed to prove his 2008 back problems and 2009 surgery were the result of his 1984/1985 work related injuries and upholding the Division's denial of benefits. Mr. Davenport petitioned the district court for review of the OAH decision, and that court affirmed. He then appealed to this Court.

## STANDARD OF REVIEW

[¶ 10] When considering an appeal from a district court's review of an administrative agency's decision, we treat the case as if it had come directly from the administrative agency, without giving any deference to the district court's decision. *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 10, 247 P.3d 845, 848 (Wyo. 2011); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2011):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 11] Under § 16-3-114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale*, ¶ 22, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo.2005) (citation omitted). " 'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings.' " *Kenyon*, ¶ 11, 247 P.3d at 849, quoting *Bush*, ¶ 5, 120 P.3d at 179.

[¶ 12] With regard to an agency determination that the employee/claimant did not satisfy his burden of proof, we have said:

If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the

---

1. Dr. Steele's records stated that Mr. Davenport had "L4 pars defects with Grade II L4 on L5 anterolisthesis." Dr. Steele explained that anterolisthesis and spondylolisthesis are synonymous.

agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale,* ¶ 22, 188 P.3d at 561 (citations omitted). "We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law." *Kenyon,* ¶ 13, 247 P.3d at 849, quoting *Moss v. State ex rel. Wyo. Workers' Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo.2010). *See also, Dale,* ¶ 26, 188 P.3d at 561–62.

## DISCUSSION

[¶ 13] The hearing examiner's decision stated:

This Office agrees with the Division. Davenport failed to prove his November 2008 low back symptoms which necessitated the 2009 fusion surgery were more probabl[y] than not causally connected to his 1984 and/or 1985 accidents and injuries at Carbon Coal. Davenport needed to prove his pars defect and associated spondylolisthesis were caused by the trauma of his injury in 1985 and his expert, Dr. Steele, did not understand the mechanism of his 1985 injury, which was essential to her opinion. Furthermore, Dr. Curnow and Dr. Williams agreed that Davenport's pars defect was more likely congenital.

[¶ 14] Although the issue was contested at the hearing, Mr. Davenport does not seem to challenge the hearing examiner's finding that his pars defect and spondylolisthesis were congenital in nature. In fact, there is substantial evidence to support that conclusion. Dr. Curnow testified in a deposi-

tion in 1986 that spondylolisthesis is typically congenital, meaning the patient is born with the defect. The doctor wrote a letter to Mr. Davenport's employer in 1985, after the second work related accident, and stated that Mr. Davenport's condition was "most likely congenital." He also stated that the tests done after Mr. Davenport's 1985 accident did not show an acute injury. The physician who performed the IME, Dr. Williams, also stated that Mr. Davenport's spondylolisthesis was congenital. On the other hand, Dr. Steele, the surgeon who performed Mr. Davenport's fusion surgery, testified that spondylothesis at the L4–L5 level is more often caused by trauma than a congenital defect, but she admitted that it is "hard to prove one way or the other." The hearing examiner, therefore, was faced with opposing expert opinions. Under those circumstances, the hearing examiner had the

responsibility, as the trier of fact, to determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented. *Clark v. State ex rel. Wyoming Workers' Safety & Compensation Div.,* 934 P.2d 1269, 1271 (Wyo.1997). The [agency] is in the best position to judge and weigh medical evidence and may disregard an expert opinion if it finds the opinion unreasonable or not adequately supported by the facts upon which the opinion is based. *Id.; Matter of Goddard,* 914 P.2d 1233, 1238 (Wyo.1996).

*Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo.2005). We do not re-weigh the evidence, but defer to the agency's decision so long as it is based on relevant evidence that a reasonable mind might accept as supporting that decision. *Id.,* ¶ 22, 116 P.3d at 1112.

*Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2009 WY 46, ¶ 18, 204 P.3d 967, 971 (Wyo.2009). *See also, Kenyon,* ¶ 25, 247 P.3d at 852.

[¶ 15] Mr. Davenport acknowledges that both Dr. Williams and Dr. Steele misunderstood the timing and nature of Mr. Davenport's injuries in the 1980s. This was true because Mr. Davenport mistakenly told both

of them that he was injured while carrying the 500 pound cylinder in 1985, when, in fact, that particular injury occurred in 1984 and quickly resolved. Dr. Williams was provided with Dr. Curnow's medical records prior to the hearing and was aware of Mr. Davenport's erroneous report at the hearing. He, therefore, took that information into account in reaching his ultimate conclusions at the contested case hearing. Mr. Davenport could not, however, locate Dr. Steele to have her reconsider her opinion in light of the correct information.

[¶ 16] On this record, the hearing examiner properly discounted Dr. Steele's opinion that Mr. Davenport's condition was caused by trauma and accepted Dr. Curnow's and Dr. Williams' opinions that his condition was congenital. As such, the hearing examiner's finding that Mr. Davenport's injury was congenital rather than traumatic in nature is not against the overwhelming weight of the evidence.

[¶ 17] Apparently recognizing the validity of the OAH ruling, Mr. Davenport argues, instead, that his injuries and subsequent need for surgery were the result of a work related aggravation of that congenital defect. He claims that the hearing examiner mistakenly failed to recognize that a material aggravation of a preexisting condition is compensable and the delayed effects of an aggravation are also compensable under the second compensable injury rule.

[¶ 18] Preexisting conditions are excluded from the definition of compensable injury:

(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:

....

(F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made[.]

Wyo. Stat. Ann. § 27–14–102(a)(xi)(F) (LexisNexis 2009).

[¶ 19] An employee who has a pre-existing condition may still recover if his "employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought." *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 10, ¶ 14, 223 P.3d 559, 562 (Wyo. 2010), citing *Lindbloom v. Teton Int'l*, 684 P.2d 1388, 1389 (Wyo.1984) and Larson's Workmen's Compensation Law. To establish the compensability of a preexisting condition, a claimant must demonstrate by a preponderance of the evidence that the work materially aggravated the condition. *Dutcher*, ¶ 15, 223 P.3d at 562; *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Slaymaker*, 2007 WY 65, ¶ 14, 156 P.3d 977, 981–82 (Wyo. 2007).

[¶ 20] The Division argues that Mr. Davenport did not raise the "aggravation of a preexisting injury" argument at the contested case hearing and, consequently, we should not address it. The rule that a party cannot raise issues on appeal which were not argued below applies to administrative decisions. *See, e.g., Shaffer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 960 P.2d 504, 507–08 (Wyo.1998). We agree that Mr. Davenport did not expressly raise the issue in his disclosure statement, etc.; however, he did mention it in his closing argument at the hearing. Although in some cases we would refuse to address the issue, we have stated that the hearing examiner "has an obligation to invoke and apply the rules of law that support a claimant's theory of the case." *Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 996 P.2d 679, 687 (Wyo.2000). *See also, Carabajal v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 119, ¶¶ 20–21, 119 P.3d 947, 954 (Wyo.2005).

[¶ 21] Under these circumstances, it is appropriate for us to consider Mr. Davenport's argument that his 1984/1985 injuries aggravated his preexisting congenital spinal defect. However, in order to recover under

this theory, he still had to establish his 2008–2009 back condition was a second compensable injury. The second compensable injury rule was described by this Court in *Wyo. Workers' Safety & Comp. Div. v. Kaczmarek,* 2009 WY 110, ¶ 9, 215 P.3d 277, 281 (Wyo. 2009) as:

Wyoming law has long recognized that a single incident at work can give rise to more than one compensable injury. *See Baldwin v. Scullion,* 50 Wyo. 508, 62 P.2d 531, 539 (1936). This principle, referred to as the second compensable injury rule, applies when "an initial compensable injury ripens into a condition requiring additional medical intervention." *Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 12 P.3d 170, 172 (Wyo.2000).

[¶ 22] Whether the claim is for an initial injury or a second compensable injury, the claimant has the burden of proving "a causal connection exists between a work-related injury and the injury for which worker's compensation benefits are being sought." *Dale,* ¶ 35, 188 P.3d at 563.

We have used a number of terms to describe the required causal connection between the first and second injuries including: "direct cause" (*Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 996 P.2d 679, 684 (Wyo.2000); *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2003 WY 83, ¶ 12, 72 P.3d 799, 803 (Wyo.2003)); "caused by" (*Casper Oil Co. v. Evenson,* 888 P.2d 221, 226 (Wyo.1995)); "causally related to" (*Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2009 WY 46, ¶¶ 26–27, 204 P.3d 967, 973–74 (Wyo.2009); *Walsh v. Holly Sugar Corp.,* 931 P.2d 241, 243 (Wyo.1997)); "direct causal connection" (*Alvarez v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2007 WY 126, ¶ 17, 164 P.3d 548, 552 (Wyo. 2007)); "direct and natural result" (*Stewart v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2007 WY 58, ¶ 12, 155 P.3d 198, 203 (Wyo.2007) (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 10.10, at 10–2 (2006))); "significant causal connection" and "predominant cause" (*Yenne–Tully v. State ex rel. Wyo. Workers' Safety &*

*Comp. Div.,* 2002 WY 90, ¶ 11, 48 P.3d 1057, 1062 (Wyo.2002)); "fairly be traced to" and "a contributing cause" (*State ex rel. Wyo. Workers' Safety & Comp. Div. v. Bruhn,* 951 P.2d 373, 377 (Wyo.1997)). Regardless of the terminology used to describe the causal connection, the burden remains the same: the claimant must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first. *Kaczmarek,* ¶ 11 n. 3, 215 P.3d at 282 n. 3. *See also, Ball v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 128, ¶ 24, 239 P.3d 621, 628 (Wyo.2010). Thus, in order to receive benefits, even under his theory of aggravation of a preexisting condition, Mr. Davenport was required to prove by a preponderance of the evidence that the condition that gave rise to his need for surgery in 2009 was the result of the 1984 and 1985 work related injuries.

[¶ 23] The OAH specifically concluded:

71. ... Davenport's testimony that he experienced waxing and waning low back pain from 1987 through 2008, was not supported by the evidence. The medical records established Davenport did not seek treatment for any low back symptoms from the date he was last seen by Dr. Curnow in 1987 until his 2004 motor vehicle accident, which is a period of seventeen years. Also, during that period of time, Davenport experienced at least three significant traumas, a chain to his chest and legs in 1992, a pulley dropped on his head in 1995, and he was thrown from a four wheeler landing on his back in 2001, but after each incident there is no mention of low back pain or symptoms.

....

73. Accordingly, this Office finds and concludes Davenport failed to prove his November 2008 lumbar spine symptoms, which were treated by Dr. Steele in 2008 and 2009, were second compensable injuries.

[¶ 24] The evidence presented at the contested case hearing established that Mr. Davenport was injured at work in 1984 and 1985 and he had a pars defect in his lumbar spine, which was noted in 1985. The

surgery in 2009 was performed to correct a movement in the spine (spondolylosthesis), which happened because he had a pars defect. It was critical, therefore, for Mr. Davenport to show that the 1984/1985 injuries, rather than a natural progression of the congenital condition, ultimately resulted in that movement of the spine which required surgical intervention.

[¶ 25] *Kenyon* provides guidance in resolving this case. Ms. Kenyon suffered a work related knee injury and underwent surgery to correct the injury. She also had preexisting osteoarthritis in her knee. For eighteen months after the surgery to correct the work related injury, she did not seek medical treatment and led a fairly active lifestyle. Later, she underwent knee replacement and requested workers' compensation benefits under the second compensable injury rule. *Kenyon*, ¶ 19, 247 P.3d at 850–51. The OAH accepted the Division's expert's opinion that she needed the knee replacement surgery because of her preexisting osteoarthritis and not the work related injury, due in part to the fact that the evidence indicated that she recovered fully after the work related injury and associated surgery. We held that the OAH was justified in accepting the Division's expert's opinion and discounting her treating physician's opinion to the contrary. *Id.*, ¶¶ 26–28, 247 P.3d at 852–54.

[¶ 26] Although Mr. Davenport's medical records demonstrated there had been significant movement of the L4 disc over the L5 disc in the years between the 1984/1985 injuries and the 2009 surgery, they did not establish that the work related injuries necessarily resulted in that movement. Significantly, Mr. Davenport did not seek any treatment for low back pain from 1987, when he last saw Dr. Curnow, until after the 2004 motor vehicle accident. During that time, he worked at various jobs, including automotive mechanic and welder. That indicates, consistent with Dr. Williams' opinion, that his back problems associated with the 1984 and 1985 work related accidents had resolved many years before the surgery. Dr. Williams testified the movement of L4 over L5 that necessitated the surgery was the result of the natural aging process and progression of Mr. Davenport's spondylolisthesis condition and the fact that he suffered the 1984/1985 work injuries did not result in the need for the surgery in 2009. As we noted earlier, the hearing examiner adequately explained his rationale for accepting Dr. Williams' opinion over Dr. Steele's.

[¶ 27] Thus, even if we accept that Mr. Davenport suffered an aggravation of his preexisting congenital condition in 1984/1985, that does not necessarily mean the aggravation caused the condition which required surgery in 2009. Mr. Davenport was obligated to establish that causal connection by a preponderance of the evidence. The evidence that Mr. Davenport worked at various jobs, was involved in several quite serious accidents and did not seek medical attention for his lower back for many years after the work related injuries, together with Dr. Williams' opinions, supported the hearing examiner's conclusion that Mr. Davenport did not meet his burden of proving that his 2008–2009 treatment was the result of his 1984/1985 work related injuries. The OAH decision is not against the overwhelming weight of the evidence and is, therefore, supported by substantial evidence in the record.

[¶ 28] Affirmed.