2012 WY 94

In the Matter of the Worker's Compensation Claims of Ryan DORMAN, an Employee of Melehes Brothers, Inc., Appellant (Petitioner/Claimant),

v.

STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent/Objector).

No. S–11–0292.

Supreme Court of Wyoming.

July 3, 2012.

Representing Appellant: Sean W. Scoggin of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   This appeal arises out of Ryan Dorman's petition for an extension of his worker's compensation temporary total disability (TTD) benefits and for reimbursement of travel expenses incurred in travelling from Idaho to Cheyenne, Wyoming, to obtain med-

ical care. The Wyoming Workers' Compensation Division (Division) denied those benefits, and that denial was upheld by the Office of Administrative Hearings (OAH) and the district court. We affirm.

## ISSUES

[¶ 2] Ryan Dorman (Dorman) presents the following issues on appeal:

I. Whether the Office of Administrative Hearing's decision and affirmation thereof by the district court, that Mr. Dorman is not entitled to receive additional temporary total disability benefits was arbitrary and capricious, as well as not supported by the substantial evidence presented at the hearing and case law.

II. Whether the Office of Administrative Hearing's decision and affirmation thereof by the district court that Mr. Dorman is not entitled to reimbursement for travel to and from visits with Dr. Beer was arbitrary and capricious and not supported by the substantial evidence presented at the hearing and case law.

## FACTS

[¶ 3] On June 23, 2005, Dorman, then a construction foreman for Melehes Brothers, Inc. of Alta, Wyoming, injured his back while lifting concrete panels. He sought medical care initially from a chiropractor in Jackson, Wyoming, and then continued his treatment with Dr. Morgan Barkdull, a chiropractor in Driggs, Idaho, which was closer to his home in Victor, Idaho. Both chiropractors originally diagnosed Dorman's injury as a "sprain/strain" of his thoracic spine.

[¶ 4] On June 30, 2005, after Dorman had experienced no improvement in his pain, Dr. Barkdull referred him to Dr. Scott Thomas, a medical doctor in Driggs. Dr. Thomas ordered x-rays, which revealed no fractures, and he injected trigger points with cortisone. On July 26, 2005, noting Dorman's continued improvement, Dr. Barkdull modified Dorman's disability certification to allow a return to light duty work with no twisting or lifting.

[¶ 5] On August 1, 2005, the Division notified Dorman that he had been awarded TTD benefits, but that those benefits were termi-

nated as of July 27, 2005, due to his ability to return to work. In October 2005, the Division issued final determinations notifying Dorman that it would no longer approve payment of medical bills or TTD benefits because Dorman's work injury had resolved. Dorman appealed, and the Division's determinations were reviewed by the OAH and district court.

[¶ 6] While Dorman's first contested case was pending, in May 2006, Dorman sought treatment from Dr. Grant Walker of the Idaho Spine Center. Dr. Walker observed "a central compression fracture at approximately the T–3 level along with an extensive soft tissue edema at T–2, including inflammation and inflammatory fluids that tracked between the bones posteriorly." Dr. Walker diagnosed a flexion/distraction injury, and during the first contested case, testified:

The flexion and distraction injuries or what we'll call a soft-tissue chance injury, consists of the force exiting out posteriorly in the ligaments, through the ligaments that connect the vertebra together. These tears can be classified as a third-degree sprain or complete disruption of the ligament. In these flexion/distraction injuries where the bone sustains a majority of the force, once the bone heals, the patients get better. In this type of a case, the central portion of the vertebra acts as the pivot point. So as the front goes down, the back goes up. And the soft tissue damage has been shown throughout the literature, throughout many years to cause continued pain symptoms if left untreated, unstabilized.

[¶ 7] Dorman remained under Dr. Walker's care until the summer of 2009, when Dr. Walker retired. Following an examination on March 12, 2009, Dr. Walker recorded the following treatment plan:

If we did surgery on the patient today, he would be off his construction job and on restrictions for 1 year. Therefore, I will renew his total temporary disability benefits form for 12 months from today's date.

[¶ 8] In the final treatment note from Dr. Walker, dated July 10, 2009, Dr. Walker recorded the following observations:

**SUBJECTIVE:** Mr. Dorman is being seen in follow-up. He still continues to have the same complaints. His pain on average is a 5/10 and on the bad days of which he has had several in the last 2 weeks, it can get up to 9/10. He is not working.

I think for an injury that is now 4 years old, the greatest single deciding piece of information is the fact Mr. Dorman is still very symptomatic. A soft tissue injury that would result in just a sprain or strain of the paraspinal muscles would not cause this amount of symptomatology for years out.

**PLAN:** My plan is that the patient still needs surgical stabilization and that he should not work. I do not think he is capable of working.

[¶ 9] On August 29, 2009, Dorman submitted a Request for Change of Health Care Provider to the Division, requesting that his physician of record be changed from Dr. Walker to Dr. Lynn Stromberg of Idaho Falls, Idaho. The reason provided for the change was Dr. Walker's retirement. On October 6, 2009, Dorman withdrew his request to have Dr. Stromberg approved as his physician of record and informed the Division that Dr. Stromberg had declined to take his case.

[¶ 10] On October 20, 2009, Dorman submitted another Request for Change of Health Care Provider, this time requesting that Dr. Robert Cach of Idaho Falls, Idaho, be designated his physician of record. On October 23, 2009, the Division issued a final determination approving Dr. Cach as Dorman's physician of record.

[¶ 11] Dorman saw Dr. Cach on October 20, 2009, and Dr. Cach noted complaints of neck pain and T-spine pain. Dr. Cach ordered MRIs of the cervical and thoracic spine. The MRI of the cervical spine showed:

1. Mild left neural foraminal narrowing at C4–5 due to uncovertebral joint osteophyte.

2. Mild bilateral neural foraminal narrowing at C5–6 due to uncovertebral joint osteophyte.

3. There is mild reversal of the lordotic curvature in the cervical spine at approximately the C4–5 level. This effaces the anterior thecal sac at this level but does not produce spinal stenosis.

The MRI of the thoracic spine showed:

1. Mild degenerative endplate spurring at multiple levels as detailed above.

2. Tiny right paracentral disc protrusion at T3–4, which does not produce spinal stenosis or significantly deform the thoracic cord.

[¶ 12] On November 3, 2009, Dr. Cach reviewed the MRI results and entered the following treatment note in Dorman's chart:

I have reviewed the new MRI's and feel no surgical intervention on his neck or T-spine is indicated. I have recommended he be seen by chronic pain management.

[¶ 13] On December 7, 2009, Dorman submitted another Request for Change of Health Care Provider to the Division. Dorman requested that his physician of record be changed from Dr. Cach to Dr. Steven Beer of Cheyenne, Wyoming. In requesting the physician change, Dorman stated that the request was not for a second opinion but because "Dr. Cach stated this is outside of his scope of expertise." On December 14, 2009, the Division issued a final determination approving Dr. Beer as Dorman's physician of record. In that final determination, the Division advised Dorman as follows concerning travel reimbursement for care by Dr. Beer:

The Wyoming Workers' Compensation Act does not allow for travel reimbursement other than that necessary to obtain closest available medical and hospital care needed by the employee. Wyoming Statute § 27–14–401(d)(ii). Dr. Beer is not the closest available provider for medical or hospital care.

[¶ 14] Dr. Beer examined Dorman for the first time on December 7, 2009. After obtaining a new MRI, Dr. Beer diagnosed a thoracic sprain and a small herniated disc in the upper thoracic spine. He recommended a T2–3 facet injection, a T3–4 facet injection, and a T2–3 epidural steroid injection. The facet injections were for diagnostic purposes,

and the steroid injection was for pain relief. When that treatment did not produce long term pain relief, Dr. Beer recommended nerve ablation treatment. As of the date of Dr. Beer's deposition in the present contested case, now on appeal, Dorman had not yet undergone the nerve ablation treatment and Dr. Beer had not recommended surgery to treat Dorman's injury.

[¶ 15] During the period that Dorman was changing physicians, the Division and Dorman negotiated a stipulation concerning his TTD benefits and other benefits. This followed OAH and district court decisions that largely reversed the Division's earlier determinations concerning TTD benefits and Dorman's need for continued medical treatment. On September 19, 2009, the Division and Dorman entered into a Stipulated Order Awarding Temporary Total Disability and Workers' Compensation Benefits, which awarded Dorman the maximum twenty-four months of TTD benefits allowed by statute and provided that any extended TTD benefits would be awarded only as permitted by the provisions of Wyo. Stat. Ann. § 27-14-404. The Stipulated Order also provided that medical benefits would be paid as directed by the district court's order.

[¶ 16] On October 18, 2009, after the Division paid the stipulated twenty-four months of TTD benefits, Dorman submitted a letter to the Division requesting extended TTD benefits. The letter, which was copied to Dorman's attorney, stated:

Thank you again for payment of 2 years wages pursuant to the Order signed by the Office of Administrative Hearings in Sept. 2009.

I am requesting reimbursement under the WY Special Circumstances provision for the remainder of my wages from 8/1/2007 forward until I have obtained surgery for my injury and have recovered to Maximum Medical Improvement. TTD forms are on file.

[¶ 17] The Division thereafter issued a final determination denying extended TTD benefits. The Division also issued final determinations denying several applications for travel expense reimbursement for Dorman's trips to Cheyenne and final determinations denying payment for cervical spine testing by Dr. Cach. Dorman requested hearings on all of the denials.

[¶ 18] The matters were referred to the OAH where a combined hearing was held on the denial of TTD benefits, denial of travel reimbursement, and denial of diagnostic testing related to Dorman's cervical spine. The OAH upheld the denial of TTD benefits on the ground that Dorman had failed to make the required showing that he reasonably expects to return to gainful employment within twelve months, and it upheld the denial of travel reimbursement on the ground that Dorman had failed to make the required showing that Dr. Beer was the closest available medical provider. The OAH reversed the denial of benefits for diagnostic testing related to Dorman's cervical spine, holding that such testing was appropriate to determine the extent of Dorman's work related injury.

[¶ 19] Dorman appealed the portion of the OAH order denying extended TTD benefits and travel reimbursement to the district court. On September 12, 2011, the district court issued its Order Affirming Final Agency Order, concluding:

Petitioner failed to demonstrate that extraordinary circumstances justified the extension of his TTD benefits, specifically by failing to make a showing by clear and convincing evidence that he could return to work within a year, given his current course of treatment. Instead, at best, Petitioner was able to demonstrate that if he underwent surgery, he *may* be able to return to work in a year, even though surgery was not being considered by his current doctor as a course of treatment. Furthermore, Petitioner failed to present any evidence to show that Dr. Beer, his doctor in Cheyenne, was the closest doctor qualified to treat his medical condition. Therefore, Petitioner failed to show that he was entitled to the reimbursement for travel to Cheyenne for treatment with Dr. Beer. (Emphasis in original.)

## STANDARD OF REVIEW

[¶ 20] We review administrative decisions based on the factors set forth in the Wyo-

ming Administrative Procedure Act, which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c)(ii) (LexisNexis 2011).

[¶ 21] Under this statute, we review an agency's findings of fact by applying the substantial evidence standard. *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo.2005) (citation omitted). " 'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings.' " *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo.2011) (quoting *Bush,* ¶ 5, 120 P.3d at 179).

[¶ 22] With regard to an agency's determination that a claimant did not satisfy his burden of proof, this Court has said:

If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Davenport v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2012 WY 6, ¶ 12, 268 P.3d 1038, 1041–42 (Wyo.2012) (quoting *Dale,* ¶ 22, 188 P.3d at 561 (citations omitted)).

[¶ 23] " 'We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law.' " *Kenyon,* ¶ 13, 247 P.3d at 849 (quoting *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo.2010)). In an appeal from a district court's appellate review of an administrative decision, we review the case as if it came directly from the hearing examiner, affording no deference to the district court's decision. *Deloge v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2011 WY 154, ¶ 5, 264 P.3d 28, 30 (Wyo.2011); *In re Kaczmarek,* 2009 WY 110, ¶ 7, 215 P.3d 277, 280 (Wyo.2009).

## DISCUSSION

### A. Extended TTD Benefits

[¶ 24] Dorman received an award of twenty-four months of TTD benefits and ap-

plied for and was denied extended TTD benefits. On appeal, he contends the OAH decision upholding the Division's denial of extended TTD benefits was not supported by substantial evidence and was arbitrary and capricious.

[¶ 25] The Wyoming Workers' Compensation Act defines the circumstances under which an injured employee is entitled to TTD benefits and the maximum period of time for which those benefits shall be made available. It provides, in part:

> The period for receiving a temporary total disability award under this section for injuries resulting from any one (1) incident or accident shall not exceed a cumulative period of twenty-four (24) months, except that the division pursuant to its rules and regulations and in its discretion may in the event of extraordinary circumstances award additional temporary total disability benefits. The division's decision to grant such additional benefits shall be reviewable by a hearing examiner only for an abuse of discretion by the division.

Wyo. Stat. Ann. § 27–14–404(a) (LexisNexis 2011).

[¶ 26] Pursuant to this statutory direction, the Division has enacted a rule defining an injured employee's eligibility for extended benefits. That rule requires clear and convincing evidence of five factors before an employee will be considered eligible for extended benefits. It provides:

> (b) *Limitation on Period of Temporary Total Disability (TTD); Extraordinary Circumstance.*
>
> (i) The period for receiving a TTD award under W.S. § 27–14–404 resulting from a single incident, accident, or period of cumulative trauma or exposure shall not exceed a cumulative period of 24 months, except that the Division, in its discretion, may award additional TTD benefits if the claimant establishes by clear and convincing evidence that the claimant:
>
> (A) remains totally disabled, due solely to a work-related injury;

(B) has not recovered to the extent that he or she can return to gainful employment;

(C) reasonably expects to return to gainful employment within 12 months following the date of the first TTD claim occurring after the expiration of the 24–month period;

(D) does not have an ascertainable loss which would qualify for benefits under W.S. §§ 27–14–405 or 406; and,

(E) has taken all reasonable measures to facilitate recovery, including compliance with the recommendations of the treating physician.

*Wyoming Workers' Compensation Div., Rules, Regulations and Fee Schedules,* Ch. 7 § 2(b)(i) (June 6, 2011).[1]

■ [¶ 27] The OAH review of the extended TTD benefits issue was confined to a determination of whether the Division abused its discretion in denying the benefits. An agency abuses its discretion when its decision "appears to be so unfair and inequitable that a reasonable person could not abide it." *Watkins v. State ex rel. Wyo. Med. Comm'n,* 2011 WY 49, ¶ 21, 250 P.3d 1082, 1089 (Wyo. 2011) (quoting *Goddard v. Colonel Bozeman's Rest.,* 914 P.2d 1233, 1238 (Wyo.1996)). Additionally, the extended benefits rule requires that a claimant prove the factors entitling him to those benefits by clear and convincing evidence, which we have held is the "kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Alexander v. Meduna,* 2002 WY 83, ¶ 29, 47 P.3d 206, 216 (Wyo. 2002) (quoting *MacGuire v. Harriscope Broadcasting Co.,* 612 P.2d 830, 839 (Wyo. 1980)). Thus the scope of the OAH review was whether the Division abused its discretion in finding that Dorman had not proven by clear and convincing evidence his entitlement to extended TTD benefits.

[¶ 28] The OAH determined that Dorman had proven with clear and convincing evidence four of the five required factors to make a showing of his entitlement to extended TTD benefits, but it upheld the Division's

---

1. The citation is to the rules currently on file, but the relevant rule did not change between the current rules and the superseded rules, which were filed on September 30, 2005.

denial because Dorman had not made the required showing that he reasonably expected to return to gainful employment within twelve months. In support of this determination, the OAH made the following findings:

77. The deciding factors then with respect to this claim is whether or not Dorman proved, by clear and convincing evidence, that he reasonably expected to return to gainful employment.

78. With respect to that issue the evidence is not clear and convincing. Rather the evidence is equivocal. At best there is an office note from Dr. Walker dated March 12, 2009 which states

"If we did surgery on the patient today, he would be off his construction job and on restrictions for 1 year. Therefore, I will renew his total temporary disability benefits form for 12 months from today's date." *Exhibit 4–3*

79. This Hearing Officer does not find this clear and convincing evidence however as it is simply a conclusory statement without foundation or basis. No evidence was offered as to Dorman's ability to perform any work other than construction work and Dr. Walker's prior statements in his medical records are not clear as to whether he thought that Dorman was permanently incapable [of] returning to construction work, or would be capable of returning after surgery.

80. In any event, surgery has not yet taken place. Further, it is not clear that surgery is still even in the plans as Dr. Cach did not recommend it and Dr. Beer appears to be hesitant to pursue it until all other options have been exhausted.

81. While Dr. Cach testified that Dorman could return to light duty work with restrictions, that was the sum total of evidence stating Dorman could return to work in any capacity. The evidence was insufficient to prove by clear and convincing evidence that Dorman could be reasonably expected to return to gainful employment within 12 months of his last application for TTD benefits.

82. Dr. Beer's testimony with respect to Dorman's return to work certainly was not clear and convincing either. Dr. Beer stated it was impossible for him to state if Dorman would be recovered within the one year period to the extent he could return to work.

83. Dorman presented no credible evidence he would likely be able to return to gainful employment within one year from his last TTD payment or at any time in the foreseeable future. Rather although Dorman professes he would like to return to work he has consistently maintained that his condition requires surgical repair and/or some form of further treatment and will not resolve until he receives such treatment. He also contends that he has been consistently restricted from work and unable to engage in gainful employment.

84. Accordingly, this Office must find that the Division's determination not to award Dorman TTD benefits in excess of the statutory 24 month period was based on consideration of all relevant factors, was rational and was within the bounds of reason[ ]. Under the Division's Rules, Dorman was required to prove all the necessary elements for extended TTD benefits, including that he "reasonably expects to return to gainful employment within 12 months following the date of the first TTD claim occurring after the expiration of the 24–month period." The Division's determination that Dorman had not proven he would likely return to gainful employment was not an abuse of discretion. Thus, Dorman did not prove all the necessary elements as provided in the Division's Rules for awarding extended TTD benefits.

[¶ 29] Although Dorman framed his challenge to the OAH determination with an assertion that the ruling was not supported by substantial evidence and was arbitrary and capricious, his argument articulates no such defect. In particular, Dorman does not dispute the evidence on which the OAH findings are based or contend that the record contains evidence that he is reasonably expected to return to gainful employment within twelve months. Instead, in his brief Dorman argues:

Mr. Dorman's medical treatment has been delayed for extended periods of time

due to the Decisions and final determinations of the Division. The Division cutoff [sic] treatment and temporary total disability benefits with entry of final determinations in October of 2005, placing Mr. Dorman in a position where financially, he did not have access to medical treatment. The matter was then "tied up" in litigation surrounding the final determinations until September of 2009, when the District Court overturned the final determinations, finding that the Division had improperly denied benefits and reinstating those benefits.... During those periods of time that a final determination of the division denying benefits is pending, staying medical treatment benefits, he was unable to pay for treatment that would improve his condition and allow him to return to gainful employment. Other than the delays caused by decisions and actions of the Division herein, Mr. Dorman had consistently sought medical treatment and followed the recommendations of his medical providers.

It is understandable that the Division does have this right to review all benefits and determine whether or not the benefits requested are proper under the Wyoming Workers' Compensation statutes, however it is not proper that the Division then deny Mr. Dorman's request for additional temporary total disability benefits when the sole reason for his continued disability is because of delays caused by the Division.

[¶ 30] We reject Dorman's argument. The Wyoming Workers' Compensation Act authorizes the Division to define the circumstances under which extended TTD benefits shall be awarded to an injured employee, and the Division has promulgated a rule setting forth those circumstances. That a claimant's benefits are disputed or the subject of a contested case is not a circumstance the Division has established as a basis for extended TTD benefits, and Dorman has provided no legal authority to expand the circumstances defined by the Division's duly promulgated rule. Moreover, even if such legal authority existed, Dorman has not supported his argument with clear and convincing evidence that the "sole reason for his continued disability is because of delays caused by the Division."

**B.  Reimbursement of Travel Expenses**

[¶ 31] Dorman has traveled several times from Idaho Falls, Idaho, to Cheyenne, Wyoming, to be examined and treated by Dr. Beer, a Cheyenne neurosurgeon. The Division has awarded benefits for the medical care provided by Dr. Beer, but it made a determination that Dr. Beer was not the closest available medical provider and thus denied reimbursement of Dorman's travel expenses. Dorman contends that the OAH decision upholding the denial of travel expenses was not supported by substantial evidence and was arbitrary and capricious.

[¶ 32] The Wyoming Workers' Compensation Act provides as follows concerning reimbursement of travel expenses incurred in obtaining medical care:

(d) Medical and hospital care shall be obtained if possible within Wyoming, or in an adjoining state if the hospital or health care provider in the adjoining state is closer to the scene of the accident or to the usual place of employment of the employee than a hospital or health care provider in Wyoming, unless otherwise authorized by the division. *Except as otherwise authorized by the division, reimbursements for travel in obtaining medical and hospital care shall not be paid:*

\* \* \* \*

(ii) *For travel other than that necessary to obtain the closest available medical or hospital care needed by the employee* except in those instances where travel within Wyoming is at a greater distance than travel outside of Wyoming[.]

Wyo. Stat. Ann. § 27–14–401(d)(ii) (Lexis-Nexis 2011) (emphasis added).

[¶ 33] A claimant must prove all essential elements of his claim for worker's compensation benefits. *Keck v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 985 P.2d 430, 433 (Wyo.1999). Dorman was thus required to show that Dr. Beer was the closest available physician who could provide the medical care Dorman needed.

[¶ 34] The OAH concluded that Dorman did not meet his burden of proof, as set forth in the following conclusions of law:

104. In this case Dorman['s] evidence consisted of his testimony that he was not able to find a doctor closer who could address his specific injury, i.e. a thoracic spine injury.

105. At the onset it is noted that both Dr. Cach and Dr. Beer are Board Certified Neurosurgeons. They both completed neurosurgical residency programs and it does not appear that either of them were "Fellowship Trained in Cervical or Thoroclumbar [sic] Surgery" as was Dr. Walker apparently. Therefore there does not appear to be any difference in their education or experience, other than the fact that Dr. Beer has been in practice longer. Neither doctor testified in their depositions that there was any subspecialty of neurosurgery dealing with the thoracic spine or that one had more expertise in that type of injury.

106. While Dorman contended that Dr. Cach stated his specialty was cranial and cervical, that does not mean that Dr. Cach was not as qualified to address his thoracic spine issues. Indeed, even though it appears that Dr. Cach may have gone beyond the work related injury to the thoracic spine to look at the cervical spine, he did engage in evaluation and recommendations relative to the thoracic spine. Accordingly, this Office finds that the evidence shows that the closest available medical care was in fact Dr. Cach in Idaho Falls, Idaho. Further, the undisputed testimony from Dr. Cach was that there were pain management providers in the Idaho Falls and Jackson area, *Cach deposition page 13*.

107. Dorman may have felt more comfortable with a health care provider other than Dr. Cach, however, he did not present evidence regarding the availability of other neurosurgeons in the Idaho Falls or Jackson area that could treat him or that a neurosurgeon without fellowship training could not adequately treat him. It appears that he was determined to find someone who he felt had similar qualification to Dr. Walker, i.e. fellowship training,

however, that is not the standard. The standard is the closest medical provider who can provide adequate care. In any event as stated there is no evidence that Dr. Beer had such specialty training.

[¶ 35] Dorman argues that his own testimony shows that the OAH conclusions were not supported by substantial evidence and were arbitrary and capricious. In particular, Dorman points to his testimony that Dr. Cach told Dorman that his thoracic complaints were outside Dr. Cach's area of expertise and that Dorman would need to find a different physician.

[¶ 36] With respect to Dorman's testimony alleging that Dr. Cach told him he was not qualified to treat Dorman's thoracic injury, the OAH made a specific finding rejecting the testimony. The OAH found:

With respect to credibility findings, overall this Hearing Officer finds that Dorman's testimony was credible, however, this Hearing Officer questions Dorman's statement that Dr. Cach stated he did not have expertise in the area of the thoracic spine. Given Dr. Cach's credentials and training this statement does not ring true. It appears to this Hearing Officer that what Dorman was really trying to get at was the fact that Dr. Walker evidently holds himself out as having some such specialty in the thoracic spine and Dr. Cach did not have the same qualifications. As noted, Dr. Walker's records state that he is "Fellowship Trained in Cervical and Thoracolumbar Spinal Surgery". Dr. Cach['s] deposition states that he did a neurosurgical residency program and that he is Board Certified. This Hearing Officer was under the impression that Dorman was simply placing more emphasis on Dr. Walker's credentials as he was not satisfied with Dr. Cach's treatment.

[¶ 37] The hearing examiner in a contested case has the responsibility to determine the relevance and credibility of evidence, and to assign the probative value and weight to be given that evidence. *Davenport*, ¶ 14, 268 P.3d at 1042. This Court will not reweigh the evidence and will defer to the trier of fact's decision so long as it is based on relevant evidence that a reasonable

mind might accept as supporting that decision. *Id.*

[¶ 38] We see no reason to part ways with the hearing examiner on her assessment of Dorman's testimony concerning Dr. Cach's expertise. Nothing in Dr. Cach's treatment notes or deposition suggests that he felt unqualified to treat Dorman's thoracic injury. Rather, his notes and testimony indicate that he felt surgery was not required, that Dorman could return to work with certain restrictions, and that Dorman would benefit from a pain management program. Moreover, we find it significant, as alluded to by the hearing examiner, that Dorman, who carried the burden of proof, did not ask Dr. Cach during his deposition to address or reaffirm his purported lack of qualifications to treat Dorman's thoracic injury.

[¶ 39] We thus find that the OAH conclusion that Dr. Cach, located in Idaho Falls, was the closest available provider is supported by substantial evidence and not arbitrary and capricious. We note, as did the hearing examiner, that this does not mean that Dorman is not permitted to choose a different physician. It merely means that Dorman is not entitled to reimbursement of travel expenses incurred to obtain treatment from the physician who is not the closest available provider.[2]

[¶ 40] We address last Dorman's contention that the Division had an obligation to provide guidance in locating the closest available physician and that it engaged in a sort of "bait and switch" by approving Dr. Beer as Dorman's health care provider of record and then denying reimbursement of travel expenses. While we agree that it would have been helpful if the Division had identified alternative physicians, and in particular physicians closer to Dorman's residence, Dorman points to no legal obligation of the Division to do so. Nor are we able to find by statute or regulation that the Division is under such an obligation. With respect to the alleged "bait and switch," we reject this contention given that the Division advised Dorman in writing, in the same notice in which it approved Dr. Beer as Dorman's health care provider, that Dr. Beer was not the closest available provider and Dorman would not be reimbursed for travel expenses incurred in seeking treatment from Dr. Beer.

### CONCLUSION

[¶ 41] The OAH conclusion that Dorman had not shown by clear and convincing evidence that he was entitled to extended TTD benefits was supported by substantial evidence and was in accordance with law. Likewise, its conclusion that Dorman had not met his burden of showing that he was seeking treatment from the closest available health care provider and was thus entitled to reimbursement of travel expenses was also supported by substantial evidence and in accordance with law. We thus affirm.

---

**2.** This Court is aware that in the Division's approval of Dorman's initial request to change his health care provider from Dr. Walker to Dr. Cach, the Division informed Dorman that Dr. Cach was not the closest available provider. The record does not disclose the basis for the Division's notice concerning Dr. Cach, but we also do know from Dorman's own testimony that Dr. Cach was located only three and one-half miles from Dorman's home. Thus, the hearing examiner's determination that Dr. Cach was the closest available provider is not against the weight of the evidence. Moreover, we also note that whether Dr. Cach is the *closest* available provider is not determinative of Dorman's entitlement to travel expense reimbursement. Dr. Cach was closer than Dr. Beer, and he was available and qualified. Dr. Beer was therefore not the closest available provider, and Dorman was not entitled to reimbursement of travel expenses related to his treatment by Dr. Beer.